1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

7
8

JOE REED,                                   )          3:07-CV-00149-BES (RAM)
                                            )
9
                Plaintiff,                  )
                                            )
10
                                            )     **REPORT AND RECOMMENDATION**
        vs.                                 )     **OF U.S. MAGISTRATE JUDGE**
11
                                            )
JOE BRACKBILL, et al.,                      )
12
                                            )
                Defendants.                 )
13
_____ )

14      This Report and Recommendation is made to the Honorable Brian E. Sandoval, United

15   States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant

16   to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

17      Before the court is Defendants' Motion to Dismiss (Doc. #25).  Plaintiff opposed the

18   motion (Doc. #27) and Defendants did not reply.

19      Both parties submitted matters outside the pleadings, including exhibits and affidavits,

20   in support of and in opposition to the instant motion; thus, both parties have had a reasonable

21   opportunity to present all material relevant to a motion for summary judgment.  This Report

22   and Recommendation considers all matters submitted by both parties; therefore, the instant

23   motion is treated as a motion for summary judgment in accordance with FED. R. CIV. PRO. 56.

24                              **I.  BACKGROUND**

25      Plaintiff is a prisoner in Ely State Prison (ESP) in Ely, Nevada in the custody of the

26   Nevada Department of Corrections (NDOC) (Doc. 11).  Plaintiff brings his complaint pursuant

27   to 42 U.S.C. § 1983, alleging state officials violated his Eighth and Fourteenth Amendment

28   rights (*Id.*).  Plaintiff also asserts a state law claim for gross negligence (*Id.*).

Plaintiff alleges that for almost three (3) years he has been denied treatment for his Hepatitis C liver disease by Defendant Dr. MacArthur and Defendant Nurse Brackbill (Doc. #11 at 5).  Plaintiff also alleges Defendants E.K. McDaniel, Brooks, MacArthur, Endel and Brackbill subjected him to cruel and unusual punishment by forcing him to kneel down in order to place leg restraints on his ankles, then forcing him to stand up with his hands cuffed behind his back and walk without his prescribed medical orthopedic boots, which he asserts has caused him to suffer lower back pain (*Id.*).  Plaintiff then alleges he has been denied treatment for "a case of real bad hemorrhoid" to the point he is seeing blood in his stools (*Id.*). Finally, Plaintiff alleges Defendant Brackbill has forced him to wear inadequate orthopedic boots in order to take short cuts in an attempt to save money (*Id.*).

Plaintiff's Second Amended Complaint includes the following causes of action: 1) violation of Plaintiff's Eighth and Fourteenth Amendment rights against cruel and unusual punishment (re: hemorrhoids); 2) violation of Plaintiff's Eighth and Fourteenth Amendment rights and gross negligence (re: hepatitis C liver disease); 3) violation of Plaintiff's Eighth and Fourteenth Amendment rights against cruel and unusual punishment (re: forcing Plaintiff to kneel down and have his hands cuffed behind his back and his legs restrained with ankle cuffs, then made to stand and walk to and from the shower and yard for exercise time without his prescribed orthopedic boots); 4) violation of Plaintiff's Eighth and Fourteenth Amendment rights against cruel and unusual punishment (re: denial of request for new orthopedic boots) (*Id.* at 4-6).

Plaintiff requests injunctive relief[1] directing NDOC and Defendants to provide Plaintiff with treatment for Hepatitis C, to provide Plaintiff with surgery to have his hemorrhoids removed, and to either provide Plaintiff with a new pair of adequate orthopedic boots or place a thicker sole with a higher heel on his current orthopedic boots (*Id.* at 17).

---

[1] Plaintiff's prayer for relief seeks a temporary restraining order; however, Plaintiff's request for a temporary restraining order was denied on December 3, 2007 (Doc. #34).  Thus, construing Plaintiff's complaint liberally, the court treats Plaintiff's prayer for relief as a request for a permanent injunction.

## II. STANDARD FOR SUMMARY JUDGMENT

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Liberty Lobby*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual

1    disputes which are irrelevant or unnecessary will not be considered. *Id.*  Where there is a

2    complete failure of proof concerning an essential element of the nonmoving party's case, all

3    other facts are rendered immaterial, and the moving party is entitled to judgment as a matter

4    of law. *Celotex*, 477 U.S. at 323.  Summary judgment is not a disfavored procedural shortcut,

5    but an integral part of the federal rules as a whole. *Id.*

6                                          **III. DISCUSSION**

7         Defendants request dismissal of Counts I, II and III on the grounds that Plaintiff failed

8    to exhaust his administrative remedies by failing to adequately notify NDOC of his complaints

9    sufficient enough to allow NDOC to address his claims (Doc. #25 at 4).  Defendants assert

10   Plaintiff also failed to pursue all available avenues of administrative review (*Id.*).  Defendants

11   next request dismissal of Counts II and IV on the grounds that Plaintiff failed to show any

12   "personal involvement" on the part of Defendants (*Id.* at 5-6).  Defendants also request

13   dismissal of Count IV on the grounds that there is no vicarious liability under § 1983 (*Id.* at

14   6-7).  Next, Defendants request dismissal of Count II and IV asserting Plaintiff failed to show

15   deliberate indifference on the part of Defendants (*Id.* at 7-9).  Finally, Defendants request

16   dismissal of Plaintiff's negligence, gross negligence and medical negligence claims asserting

17   Plaintiff has failed to sufficiently plead the elements of negligence, failed to attach an affidavit

18   of a medical expert supporting his allegations as required under NRS 41A.070, and because

19   state employees may not be sued in a state tort for medical negligence pursuant to NRS 41.031

20   (*Id.* at 12).  Defendants did not request dismissal of Counts I and III on the merits for failure

21   to state a claim; Defendants only addressed these claims in their request to dismiss for failure

22   to exhaust administrative remedies.

23        Plaintiff argues he forewarned all the Defendants of his complaints with sufficient detail

24   to allow prison officials and the medical staff to address his claims and adequately treat all

25   of his illnesses (Doc. #27 at 2).  Plaintiff also argues that he exhausted all of his administrative

26   remedies (*Id.* At 5).  Plaintiff attempts to detail the personal involvement of each Defendant

27   and does not address Defendants' argument regarding his gross negligence claim.

28                                               4

## A.   Failure to Exhaust Administrative Remedies

The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The PLRA exhaustion requirement is an affirmative defense that must be raised and proved by the defendant. *Wyatt v. Terhune*, 315 F.3d 1108, 1112 (9th Cir. 2003).  Exhaustion is mandatory; the district court is left with no discretion. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

Prisoners must exhaust all "available" remedies. *Id.*  Exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but, rather, the PLRA requires "proper exhaustion." *Id.* at 93.  "Proper exhaustion" is defined as "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* at 2385 (*quoting Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).  This district court has interpreted Justice Alito's majority opinion in *Woodford* as setting forth two tests for "proper exhaustion": 1) the "merits test", which is satisfied when a plaintiff's grievance is fully addressed on the merits by the administrative agency and appealed through all the agency's levels, and 2) the "compliance test", which is satisfied when a plaintiff complies with all critical procedural rules and deadlines. *Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev 2006).  "A finding that a plaintiff has met either test is sufficient for a finding of 'proper exhaustion'.  Defendant must show that Plaintiff failed to meet both the merits and compliance tests to succeed in a motion to dismiss for failure to exhaust administrative remedies." *Id.*

### 1.   Count I - Hemorrhoids

For prisoners within the NDOC system, exhaustion of administrative remedies includes complying with the grievance procedures set forth in Administrative Regulation 740 (AR 740).  Defendants argue Plaintiff did not exhaust his administrative remedies in Count I against Defendant MacAurthur for failing to allow Plaintiff to have hemorrhoid surgery (Doc. #25

1   at 4).  Defendants contend Plaintiff failed to advise NDOC that his complaint was against

2   Defendant MacArthur and not APN Lemich (Doc. #25 at 4).  Defendants point to a grievance

3   printout to support their contention that Plaintiff did not list Defendant MacArthur on the

4   grievance, but instead listed APN Lemich (*Id.*, Exh. A).  It appears Defendants are arguing

5   Plaintiff did not meet the compliance test.

6          The grievance printout shows Plaintiff made clear he was grieving the treatment he was

7   receiving for his hemorrhoids and, while he may not have listed Defendant MacArthur,

8   individually, he did indicate he was grieving the "Medical Department here at ESP" based on

9   his hemorrhoid treatment.  Thus, Defendants were on notice that Plaintiff was grieving all

10  the medical personnel at ESP who were treating his hemorrhoids whether he listed them

11  individually or not.  Defendants have not shown Plaintiff failed to comply with all critical

12  procedural rules and deadlines as required under the compliance test.  The record also

13  indicates Defendants addressed Plaintiff's grievance on the merits and it was appealed through

14  all the agency's levels (*Id.*, Exh. C, p. 8)**.**  In a thorough analysis of the *Woodford* decision,

15  the *Jones* court found that "[i]f the agency addresses a grievance on the merits at every level

16  available, the inmate has 'us[ed] all steps that the agency holds out, and do[ne] so properly

17  (so that the agency addresse[d] the issues on the merits.'  This understanding of the merits

18  test comports closely with the language of *Woodford* and the Supreme Court's concern with

19  protecting administrative agency authority.  Agency authority is also protected once the merits

20  test is satisfied because the agency has had a full chance to address and correct any internal

21  issues before going to court." *Jones*, 457 F. Supp. 2d at 1137.  Accordingly, the evidence before

22  the court indicates that Plaintiff did, in fact, exhaust his available administrative remedies with

23  regard to Count I.

24          **2.    Count II - Hepatitis C / Gall Stone**

25          Defendants argue Plaintiff did not exhaust his administrative remedies in Count II

26  because he failed to mention treatment for Hepatitis C (Doc. #25 at 4-5).  Defendants

27  argument is belied by the record.

28                                           6

First, the record shows Plaintiff filed numerous medical kites and an emergency grievance requesting treatment for his Hepatitis C and a pain in his lower right side (Doc. #27-2 at 21-33).  Then, Plaintiff filed an Administrative Claim Form on December 6, 2006, alleging he was suffering from right side pain and further asserting he thought the pain was caused by his Hepatitis C (Doc. #27-2 at 11).  Plaintiff also alleges he requested to receive treatment for his Hepatitis C seven (7) to ten (10) times, only to be denied treatment by Defendant Brackbill (*Id.* at 13).  Plaintiff further alleges his bilirubin level went up (*Id.* at 14).  The next day, on December 7, 2006, Plaintiff filed an Informal Grievance (#2006-24-19176) claiming he though his Hepatitis C was causing the pain in his side and that he was later informed that he may be suffering from a gall stone (Doc. #27-2 at 8).  This grievance focuses on lab work that was purportedly done in 2006 indicating he had a gall stone and Defendants' alleged failure to order further testing (*Id.* at 8-9).  On January 2, 2007, Plaintiff submitted a First Level Grievance, which again focused on Defendants' alleged failure to inform Plaintiff of his lab results in a timely fashion and their alleged denial of treatment to determine the cause of Plaintiff's side pain *(Id.* at 1-2).  Plaintiff states his hepatitis C started to go bad because of the gall stone infection and he claims his bilirubin level is high at 2.2 (*Id.*).  Finally, on January 31, 2007, Plaintiff filed a Second Level Grievance that again focuses on the 2006 lab results and Defendants' alleged denial of treatment for his side pain (*Id.* at 5-6).  Plaintiff does not specifically mention Hepatitis C; but, Plaintiff does state Defendants have denied him treatment to determine the cause of his side pain and he requests a medical transfer to receive adequate treatment for his "two (2) chronic illnesses." (*Id.* at 6).  It is evident Plaintiff is referring to his Hepatitis C and purported gall stone when he states his two (2) chronic illnesses.

Viewing the evidence and the facts in the light most favorable to him, Plaintiff did exhaust his administrative remedies in Count I with regard to his Hepatitis C.

///

///

7

### 3.   __Count III - No Kneel Order and Denial of Orthopedic Boots__

Defendants argue Plaintiff did not exhaust his administrative remedies in Count III because he did not appeal his level one denial of grievance #2005-24-1051 as required under AR 740 (Doc. #25 at 5).

In Count III, Plaintiff alleges Defendants violated his Eighth Amendment rights by forcing him to walk around and kneel down to have his hands cuffed behind his back and leg restraints placed on his ankles, then forcing him to walk to and from the shower and the yard without his medically prescribed orthopedic boots (Doc. #11 at 11).  Although Plaintiff refers to grievance #2005-24-1051, Plaintiff also alleges he was forced to suffer serious injury from December, 2004 through October, 2006 (*Id.*).  The record indicates that grievance #2005-24-1051 is not the only grievance Plaintiff filed that relates to Count III.  Thus, Plaintiff's failure to appeal that grievance does not necessarily preclude Plaintiff from bringing Count III.

The record shows Plaintiff also filed a First Level Grievance (#2006-24-11620), on August 3, 2006, asserting he was suffering from "real bad lower back pain from being forced to kneel down then to stand up but this medical dept still is refusing to see me and to treat me for lower back pain ..." (Doc. #27-3 at 2).  Plaintiff then filed a Second Level Grievance, on August 14, 2006, asserting he was "refused/denied adequate medical treatment for real bad lower back pain every time [he is] forced to kneel down and then to stand up (Doc. #27-2 at 37-38).  The record also shows Plaintiff filed an Informal Grievance (#2006-24-18024), a First Level Grievance and a Second Level Grievance dealing with the alleged denial of adequate orthopedic boots (Doc. #27-3 at 11-22).  Thus, although only one grievance specifically mentions a "no-kneeling" order, Count III is not limited to just a denial of a no kneeling order.  In Count III, Plaintiff also alleges Defendants forced him to kneel and denied him adequate medically prescribed orthopedic boots. Thus, viewing the evidence and the facts in the light most favorable to him, Plaintiff exhausted his administrative remedies in Count III.

1    For the foregoing reasons, Defendants' request to dismiss Counts I, II and III for failure

2    to exhaust administrative remedies should be **DENIED**.

3    **B.    PERSONAL PARTICIPATION / RESPONDEAT SUPERIOR LIABILITY**

4    Liability under § 1983 arises only upon a showing of personal participation by the

5    defendants in the alleged constitutional deprivation. *Taylor v. List*, 880 F.2d 1040, 1045 (9th

6    Cir. 1989). There is no respondeat superior liability under § 1983. *Jones v. Williams*, 297 F.3d

7    930, 934 (9th Cir. 2002) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (rejecting

8    the concept of respondeat superior liability in the section 1983 context and requiring

9    individual liability for the constitutional violation); *Taylor v. List*, 880 F.2d 1040, 1045 (9th

10   Cir. 1989) (requiring personal participation in the alleged constitutional violations); *May v.*

11   *Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980) (holding that section 1983 liability must be based

12   on the personal involvement of the defendant)); *see also Ybarra v. Reno Thunderbird Mobile*

13   *Home Village*, 723 F.2d 675, 680 (9th Cir. 1984).

14   A supervisor is only liable for constitutional violations of his subordinates if the

15   supervisor participated in or directed the violations, or knew of the violations and failed to

16   act to prevent them. *Taylor*, 880 F.2d at 1045.  In other words, a supervisor may be liable

17   under § 1983 only if there exists either "'(1) his or her personal involvement in the

18   constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's

19   wrongful conduct and the constitutional violation.'" *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th

20   Cir. 2001) (internal citations omitted) (emphasis in original).

21   Defendants assert Count IV against Defendant McDaniel should be dismissed because

22   Plaintiff failed to show any personal involvement in the alleged deprivation on the part of

23   Defendant McDaniel (Doc. #25 at 5-6).  Defendants further asserts Count IV against

24   Defendant McDaniel should be dismissed because Plaintiff has failed to show Defendant

25   McDaniel, acting in his supervisory capacity, was deliberately indifferent to Plaintiff's serious

26   medical needs (*Id.* at 7).  Finally, Defendants assert Count II should be dismissed because

27

28                                                           9

1   Plaintiff has not alleged personal involvement in an alleged deprivation on the part of any

2   Defendants (*Id.* at 6).

3        **1.**     **Count II - Hepatitis C / Gall Stone**

4        In Count II, Plaintiff alleges Defendant Brackbill had personal knowledge of his lab

5   results for approximately four (4) months without informing Plaintiff of said results and

6   without starting treatment and those results indicated Plaintiff may have possible gall stones

7   and indicated Plaintiff's bilirubin level was high(Doc. #11 at 9).   Plaintiff further alleges

8   Defendant Brackbill denied his requests for treatment for his Hepatitis C (*Id.* at 10).   Plaintiff

9   then alleges Defendants Gedney, Bannister, Rhodes and MacArthur denied Plaintiff's repeated

10  requests for treatment for his Hepatitis C (*Id.*).   Construing the complaint liberally and in

11  favor of Plaintiff, he essentially alleges these named Defendants violated his constitutional

12  rights by personally denying him adequate medical care.   Plaintiff has pled facts indicating

13  these Defendants each either treated Plaintiff or reviewed Plaintiff's medical record and each

14  personally denied Plaintiff's request for treatment for his Hepatitis C. Thus, under these facts,

15  Plaintiff has sufficiently pled personal participation on the part of these Defendants.

16       **2.**     **Count IV - Inadequate Orthopedic Boots**

17       In Count IV, Plaintiff alleges Defendant McDaniel denied his Informal and First Level

18  grievances regarding the inadequate orthopedic boots (Doc. #11 at 14).   The record shows

19  Defendant McDaniel personally signed or responded to the following grievances and requests:

20  2005-24-1051 (Doc. #27-2 at 35), Inmate Interview Request dated August 30, 2006 (*Id.* at

21  36), 2006-24-11620 (Doc. #27-3 at 1) and 2006-24-18024 (*Id.* at 14). Presumably, Defendant

22  McDaniel personally reviewed the grievances and agreed with or acquiesced in the responses

23  given before signing as "Grievance responder." Thus, Plaintiff has sufficiently shown personal

28                                    10

1  involvement on the part of Defendant McDaniel with regard to these grievances. These

2  grievances form part of the basis of Plaintiff's claim in Count IV.[2]

3      For the foregoing reasons, Defendants' request to dismiss Count II and IV as to

4  Defendant McDaniel for lack of personal participation should be **DENIED**.

5  **C.   EIGHTH AMENDMENT**

6      Plaintiff's complaint alleges violations of Plaintiff's Eighth and Fourteenth Amendment

7  rights based on Defendants' alleged denial of proper medical treatment (Doc. #11). Plaintiff's

8  status determines the appropriate standard for evaluating his conditions of confinement. The

9  Eighth Amendment applies to "convicted prisoners." *See Whitley v. Albers*, 475 U.S. 312, 318-

10 319 (1986); *Bell v. Wolfish*, 441 U.S. 520, 536 n.16 (1979); *Jones v. Johnson*, 781 F.2d 769,

11 771 (9th Cir. 1986). The more protective Fourteenth Amendment standard applies to

12 conditions of confinement when detainees have not been convicted. *See Bell*, 441 U.S. at 535-

13 537; *see also Gary H. v. Hegsrtom*, 831 F.2d 1430 (9th Cir. 1987). Here, Plaintiff has been

14 convicted; therefore, the Eighth Amendment standard applies to Plaintiff's claims.

15     Under the Eighth Amendment, where inmates challenge prison conditions, the

16 Supreme Court has applied a "deliberate indifference" standard. In *Estelle v. Gamble*, 429

17 U.S. 97, 104 (1976), the Supreme Court determined that deliberate indifference to a prisoner's

18 serious medical needs constitutes the "unnecessary and wanton infliction of pain" proscribed

19 by the Eighth Amendment. "This is true whether the indifference is manifested by prison

20 doctors in their response to the prisoner's needs or by prison guards in intentionally denying

21 or delaying access to medical care or intentionally interfering with the treatment once

22 proscribed." *Estelle*, 429 U.S. at 104-105. Deliberate indifference to a prisoner's serious illness

23 or injury states a cause of action under §1983. *Id.* at 105.

24     Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060

25 (9th Cir. 2004). A showing of medical malpractice or negligence is insufficient to establish

26

27      [2] Defendants' argument regarding whether or not Defendant McDaniel's conduct constitutes deliberate indifference is discussed under the Eighth Amendment analysis in subpart C.

28                                     11

a violation under the Eighth Amendment. *Id.*   Instead, Plaintiff must meet two (2) requirements in order to show Defendants acted deliberately indifferent to his serious medical needs.  First, Plaintiff must show, as an objective matter, that Defendants' actions rise to the level of a "sufficiently serious" deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also, Rhodes v. Chapman*, 452 U.S. 337, 345-346 (1981); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  Second, as a subjective matter, Plaintiff must show Defendants had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834.  In other words, Plaintiff must show Defendants knew he faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it either by their actions or inactions. *Id.* at 837.  Plaintiff need not show Defendants acted or failed to act believing that harm actually would befall him; it is enough that Defendants acted or failed to act despite having knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 842.

Defendants assert Count II and Count IV fail because Plaintiff has not shown Defendants were deliberately indifferent to his serious medical needs (Doc. #25 at 7-8).

### 1.   Count II - Hepatitis C / Gall Stone

Defendants assert Plaintiff failed to show they were deliberately indifferent to his serious medical needs regarding having his gall stone removed because on January 2, 2007, ultra sound results showed Plaintiff did not have a gall stone that needed to be removed (*Id.* at 8).  Count II of Plaintiff's complaint; however, does not merely allege a constitutional deprivation in the failure to remove a gall stone.  Construing the complaint liberally, Plaintiff alleges Defendants initially took lab work on Plaintiff, on or about August 12, 2006, and then delayed informing Plaintiff that the lab results indicated a possible gall stone and that his bilirubin level had risen (Doc. #11 at 8-9).  Plaintiff also alleges Defendants did not provide follow-up treatment based on those lab results and Defendants denied Plaintiff's request for Hepatitis C treatment (*Id.*).  Thus, the January 2, 2007 negative ultra sound results shows Defendants were not deliberately indifferent to Plaintiff's serious medical needs by denying surgery for gall stones; however, the results do not dispose of Count II entirely if Defendants

12

were deliberately indifferent to Plaintiff's serious medical needs with regards to any treatment the 2006 lab results indicated Plaintiff needed at that time and the denial of treatment for Plaintiff's Hepatitis C.

First, Plaintiff must show a sufficiently serious deprivation by showing Defendants' alleged actions or inactions involve the "unnecessary and wanton" infliction of pain, which includes inflictions of pain that are "totally without penological justification." *Rhodes*, 452 U.S. at 346 (internal citations omitted). The Ninth Circuit has found "[a] 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' The 'routine discomfort' that results from incarceration and which is 'part of the penalty that criminal offenders pay for their offenses against society' does not constitute a 'serious' medical need." *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) (internal citations omitted). "In examining medical conditions separate from the 'routine discomfort' of incarceration, indicia of a 'serious' medical need include (1) the existence of an injury that a reasonable doctor would find important and worthy of comment of treatment, (2) the presence of a medical condition that significantly affects an individual's daily activities, and (3) the existence of chronic or substantial pain." *Id.* at 546, n.3.

Here, Plaintiff alleges he began suffering from side pain on his right side, which he attributed to his Hepatitis C (Doc. #11 at 9). On or about August 12, 2006, Plaintiff alleges lab results indicated it may be gall stones (*Id.*). Then, on or about January 2, 2007, an ultra sound indicated he did not have gall stones (Doc. #25 at 8). Apparently, Plaintiff was informed his bilirubin level was a 2.2 and he attributes his side pain to his bilirubin level. Plaintiff then began requesting treatment for his Hepatitis C (*Id.*, Exh. A). Thus, Plaintiff basically asserts the denial of treatment for his Hepatitis C is a serious deprivation because he experiences chronic side pain and his bilirubin level is high.

The record indicates that no doctor has deemed it medically necessary for Plaintiff to receive treatment for his Hepatitis C and, in fact, Defendant Bannister informed Plaintiff that

13

there is no specified treatment recommended for Hepatitis C (Doc. #27-2 at 18). Additionally, in response to a letter Plaintiff wrote on February 7, 2007, David Lupan, Senior Associate Dean for Basic Science and Medical Research, also informed Plaintiff that there is no treatment for any form of hepatitis caused by a virus (*Id.* at 19). The record further indicates Plaintiff did, in fact, receive treatment, as lab tests were ordered and an ultra sound was conducted and, based on those results, no doctor has opined that Plaintiff needs Hepatitis C treatment. Under these facts, at most, Plaintiff has raised a difference of medical opinion regarding his treatment. A difference of opinion does not amount to a deliberate indifference to Plaintiff's serious medical needs. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Thus, Plaintiff has not shown deliberate indifference on the part of Defendants as required for liability under § 1983. Accordingly, Defendants' request to dismiss Count II of Plaintiff's complaint should be **GRANTED**.

### 2.    Count IV - Inadequate Orthopedic Boots

Defendants assert Count IV shows Plaintiff is receiving adequate medical care with regards to his orthopedic boots and Plaintiff merely disagrees with the care given (Doc. #25 at 8). In Count IV, Plaintiff alleges Defendants are forcing him to wear inadequate orthopedic boots that are worn out (Doc. #11 at 13). Plaintiff asserts he cannot wear state boots, even if altered, because the outer soles are too flat and there are no heels to help relieve the pressure the state boots put on Plaintiff's lower back (*Id.*). Plaintiff claims he walked around in the state boots for twenty-four (24) hours and they immediately caused him lower back pain and put blisters on his feet (*Id.* at 14).

The record indicates Plaintiff refused to accept two (2) pairs of boots. Initially, Plaintiff requested a new pair of orthopedic boots because his old boots were worn out (Doc. #11 at 20). Then, after Defendants offered Plaintiff a new pair of orthopedic boots, Plaintiff claimed they were inadequate and wanted his old pair of orthopedic boots returned back to him at once (Doc. #11 at 34). Plaintiff requested special boots ordered from an outside vendor, which would put lifts on the boots for his medical condition because the state boots were allegedly

14

too flat (*Id.* at 20). Defendants refused and informed Plaintiff they do not use outside vendors (*Id.*). It appears Defendant Bannister informed Plaintiff that his state boots could be altered to meet his needs (*Id.* at 20) and the record indicates Plaintiff's state boots were, in fact, altered; however, Plaintiff found the altered state boots inadequate (*Id.* at 22 ("I can't wear state boot and you had these orthopedic boots made out of state boots trying to save the State of Nevada Dept. of Correction money by taking a short cut to provide me with a pair of orthopedic boots by using state boot.")).

No reasonable doctor found the existence of an injury important or worthy of comment to opine that Plaintiff cannot wear state boots or altered state boots. Furthermore, no doctor deemed it medically necessary for Plaintiff to receive orthopedic boots from an outside vendor. Plaintiff simply asserts that he cannot wear state boots, even if altered, because they hurt his lower back and cause blisters on his feet. Plaintiff has provided no medical evidence showing he suffers from lower back pain due to inadequate orthopedic boots, and the record indicates Defendants have treated Plaintiff's requests for adequate boots by issuing new boots and altering Plaintiff's boots. Thus, Plaintiff's complaint does not allege Defendants refused to provide Plaintiff with prescribed orthopedic boots; instead, Plaintiff's Complaint ultimately alleges Defendants refused to provide Plaintiff with a pair of "adequate" orthopedic boots that meet Plaintiff's satisfaction. Therefore, at best, Plaintiff's Complaint alleges a difference in medical judgment. Furthermore, there is no indication in the record that Plaintiff's new orthopedic boots significantly affect Plaintiff's daily activities and, while Plaintiff complains of low back pain and blisters caused by the new boots, Plaintiff was advised by medical authorities to wear the boots a little at a time in order to break them in (*Id.* at 25). Plaintiff disagrees with this treatment. As previously stated, a difference of opinion does not amount to a deliberate indifference to Plaintiff's serious medical needs. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Thus, Plaintiff has not shown deliberate indifference on the part of Defendants as required for liability under § 1983. Accordingly, Defendants' request to dismiss Count IV of Plaintiff's complaint should be **<u>GRANTED</u>**.

15

1

### D.      NEGLIGENCE

2

Plaintiff alleges gross negligence with regards to the facts giving rise to Count II in his

3

complaint (Doc. #11 at 9).  In order to determine if Defendants were grossly negligent, it is

4

necessary to understand the meaning of ordinary negligence under Nevada law. *Stiff v.*

5

*Holmes,* 85 Nev. 73, 77, 450 P.2d 153, 155 (1969).

6

To recover in an ordinary negligence action, Plaintiff must demonstrate 1) Defendants

7

owed Plaintiff a duty of care, 2) Defendants breached that duty, 3) that breach of duty caused

8

harm to Plaintiff that was reasonably foreseeable, and 4) damages. *Butler ex. rel. Biller v.*

9

*Bayer*, 168 P.3d 1055, 1065 (Nev. 2007).  In Nevada, the question of whether a defendant was

10

negligent in a particular situation is a question of fact for the jury to resolve; however, if a

11

plaintiff cannot recover as a matter of law, the defendant is entitled to summary judgment.

12

*Id.* at 1063.  "To establish entitlement to judgement as a matter of law, a moving defendant

13

must show that one of the elements of the plaintiff's prima facie case, such as duty, breach,

14

causation, or damages, is clearly lacking as a matter of law." *Id.* (internal quotations omitted).

15

"Gross negligence is a manifestly smaller amount of watchfulness and circumspection

16

than the circumstances require of a prudent man" and the difference between ordinary

17

negligence and gross negligence is that they "differ in the degree of intention." *Hart v. Kline*,

18

61 Nev. 96, 116 P.2d 672-674 (1941).

19

20

21

22

> Gross negligence is substantially higher in magnitude than ordinary negligence. Gross negligence is manifested by the absence of even slight diligence or want of even scant care, or a heedless and palpable violation of legal duty respecting rights of others.  A party is 'grossly or wantonly negligent' if he acts or fails to act when he knows or has reason to know facts which could lead a reasonable person to realize that his conduct not only creates unreasonable risk of bodily harm to others but also involves high probability that substantial harm will result.

23

*Batt v. State*, 111 Nev. 1127, 1132, 901 P.2d 664, 667 (1995).

24

Defendants assert Plaintiff's negligence, gross negligence and medical negligence claims

25

in Count II should be dismissed because Plaintiff failed to plead the elements of negligence

26

27

28

16

and Plaintiff has not provided a medical expert affidavit as required under NRS 41A.071 (Doc. #25 at 11-12).  Plaintiff has only plead a claim for gross negligence under Count II.

As a general rule, state officials have a duty to exercise ordinary care in performing their duties. *Sims v. General Telephone & Electronics*, 107 Nev. 516, 521-525, 815 P.2d 151, 154-156 (1991).  Thus, at a minimum, Defendants had a duty to exercise reasonable care with regards to Plaintiff's medical claims.  In Count II, Plaintiff alleges Defendant Brackbill had knowledge of his lab results for over four (4) months before informing Plaintiff that his bilirubin level was high and Defendants were grossly negligent in denying Plaintiff treatment for his Hepatitis C (Doc. #11 at 10).  Plaintiff acknowledges being told by numerous doctors, including Dr. Gedney, Dr. Bannister, Dr. Rhodes and Dr. MacArthur, that he does not fit the profile for Hepatitis C treatment; however, Plaintiff contends Defendants were, nevertheless, grossly negligent in denying him treatment (Doc. #11 at 10).

As previously discussed, Plaintiff has failed to provide evidence that any doctor opined that he needs Hepatitis C treatment.  Plaintiff merely asserts, in his own judgment, that he needs such treatment.  Under these facts, Plaintiff has failed to show Defendants breached a duty owed to him that caused harm to Plaintiff that was reasonably foreseeable to support an ordinary negligence claim; and Plaintiff has failed to show Defendants acted or failed to act knowing or having reason to know facts which could lead a reasonable person to realize that his conduct not only creates an unreasonable risk of bodily harm to others but also involves a high probability that substantial harm will result, which would support a gross negligence claim.  Plaintiff has simply shown that, at a minimum, Defendants periodically monitor Plaintiff's bilirubin level, and several doctors agree that Plaintiff does not require

treatment at this time.[3]   Accordingly, Defendants' request to dismiss Plaintiff's gross negligence claim in Count II should be **GRANTED**.

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the District Judge enter an order **GRANTING in part** and **DENYING in part** Defendants' Motion to Dismiss (Doc. #25) as follows:

1) Defendants' request to dismiss Counts I, II and III for failure to exhaust administrative remedies should be **DENIED**.

2) Defendants' request to dismiss Count II and IV as to Defendant McDaniel for lack of personal participation should be **DENIED**.

3) Defendants' request to dismiss Plaintiff's Eighth and Fourteenth Amendment claims in Count II of Plaintiff's complaint should be **GRANTED** and dismissed with prejudice.

4) Defendants' request to dismiss Plaintiff's Eighth and Fourteenth Amendment claims in Count IV of Plaintiff's complaint should be **GRANTED** and dismissed with prejudice.

5) Defendants' request to dismiss Plaintiff's gross negligence claim in Count II should be **GRANTED** and dismissed with prejudice.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

///

///

---

[3] Defendants contend Plaintiff's "medical negligence" claim should be dismissed for failure to attach the required affidavit under NRS 41A.071(Doc. #25 at 12).  NRS 41A.071 deals with actions for medical or dental malpractice.  Plaintiff has not stated a claim for medical malpractice; however, construing Plaintiff's complaint very liberally, in the event he is suing NDOC's medical personnel for malpractice, Plaintiff has failed to attach the required affidavit from a medical expert who practices or has practiced in an area that is substantially similar to the type of practice engaged in at the time of the alleged malpractice. *Id*.

2.  That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED:   July 2, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

19